Good morning, your honors. May it please the court, Robert Swain for the appellant, Mr. Jimenez-Peralta. I intend to watch the clock and reserve at least three minutes for rebuttal. I intend to address the issues in the order that they are in the brief, and so I'd like to start out with the breaking material, or what I contend is breaking material, that relates to the I'm 10-15 Facebook group. Now, we made a specific request for that. We showed the background of this Facebook group, the history of its racist, violent postings, and we know from the court's comments, but I renewed my objection right before trial, that the material relates to the Facebook group. And what is that material specifically? What material did you request? I requested all the Hempthorne material relating to the participation by the agents in the Facebook group. So the Hempthorne material, the Hempthorne case, relates to personnel files. So you were requesting any information in these agents' personnel files that related to these Facebook groups. Is that correct? Well, I requested that, but I don't think it was just that narrow. I asked for the government to find any information they have relating to the participation in this group. Okay, so any information in the government's position showing the agent's relationship to this Facebook group. Correct. Is that correct? Correct. Okay. And did you, was it limited to that, or were you asking them to go get more information about the Facebook group as to these officers? Well, yeah. My argument in my request under Brady was that the government had a duty to find out what information the government had and any government agency had regarding the agent's participation in the group. So I'm just trying to understand what that means, though. So maybe there was already a manila folder somewhere with information about this in the prosecutor's office, and you wanted them to look at it, or maybe you wanted them to go online and do searches. Which are both? Well, I think that I wanted them to do a vigorous headphone review in order to tell the agency, and also to ask the agents. I think they had a duty to ask the agents themselves, and I requested that to say what was your participation in this group, if you participated in any way or were a member of this group. I'm sorry. I guess my reading of the AUSA's declaration, which admittedly is ambiguous as to what the source of the information was, was that that's exactly what they did. They asked the agents what their participation was in the group, and the agents said, we neither commented, posted, or liked, I think is the phrasing that they used, on anything on the page. Yeah, assuming that that was what was in the material. Yeah, assuming that that was what was in the material. To me, that's essential brainy material, that they were members of this group. The Davis v. Alaska, all the Supreme Court and Ninth Circuit cases said, you have a vigorous right to cross-examine witnesses about their bias. I think that just membership in the group, that would have been a subject for cross-examination. How did they respond when they were asked about how long they were members? What did they report wrongdoing by other members on the page? We know that this was something Border Patrol agents were trying to hide. Within hours after it became public, the Facebook group went from 10,000 to about 4,000. According to the articles I cited, there was mass deletions of posts and membership. The mere fact that they were members of this group would have been a subject for cross-examination, and the fact finder would be able to evaluate how their explanation is. If I understand correctly, assuming, for argument's sake, that the sealed material indicated that these agents had been members of one or more of these Facebook groups, you would say that, in itself, is material brainy information that should have been disclosed. Is that correct? That's correct. We know that the Facebook group was replete with violent... To follow up on Judge Friedland's question, you're not, if I understand correctly, you're not saying that the government erred by not doing its own, launching its own discovery of Facebook if it didn't have this information in the file. Is that correct? Well, that's not completely correct, because there's some duty to undergo some type of review. Now, if it's just the agents, if the whole material... No, wait. I mean, there's a duty for the government to search all of the government files, but where are you saying there's a duty to go and do independent discovery of something else? Well, for one thing, this was an ongoing investigation. I mean, this was in the summer of... The trial was in November of 2019. This was exposed in the summer of 2018. There was numerous ongoing investigations. You know, I don't have any information of when they stopped looking for information, but this was an ongoing thing that the government, I think, right up until trial would have had to see what the further investigations revealed. And so that sounds like an answer that you think there was information already in the government's possession rather than that they need to go out looking for potentially impeaching material. I don't think they need to do their own Internet research or try to find something. These are government investigations that are ongoing that we know from the public reporting on it. And what makes you think they didn't do that search? Well, I don't know, because I wasn't provided any of the information. But if I can get back to the central point, if they're members of the group, that alone is Brady, and that was not turned over. And I would suggest that's reversible error just in that narrow ground. So for Brady, there would have to be the showing that, let's assume for argument's sake that they were members, that that would be prejudiced as material and that there's a reasonable probability that the case would have been different. Can you address that? Yes, certainly. To me, this is the synchronon of reversible error. When it's the only evidence, it's two witnesses. And a video. And a video. And a video, but the video doesn't really move the ball much either way, in my opinion, in terms of the essential elements of the offense. But you're absolutely right. The video, particularly Agent Seidel's, the whole case rests on his testimony. And so, you know, you have cases like. . . Also, you have the defendant in custody that day. So what is the scenario that sort of leads to him being in custody but doesn't lead to this being the violation that he was charged with? Well, because the evidence on the essential elements was severely lacking. If I could shift for a moment to the identification, which this court has noted is the weakest type of evidence in in-court identification of a defendant's unit counsel table. But the government simply has it wrong in their brief at page 16, where they say the agent identified the individual in the photo reported initial. The agent actually said that he couldn't see the photo in the report. And when asked on cross-examination, you know, where does this identification come from since you can't remember anything else about that day? Well, it turns out he went to the station and looked at some photographs online, and then that's what he's identifying. And so that wasn't introduced into evidence. We don't know if it's the same person, when it was taken. He admitted on cross-examination that it wasn't taken by him. Let's assume that your client was arrested the day in question and that we think the in-court identification was okay to link him to the person who was arrested. Tell us what other elements you think really turned on this testimony and how it could be that some other story would have been the explanation. Well, the other testimony that's essential is alienage and entry. And, you know, the evidence was very weak on both those points. It's a single alleged statement in the field. And, you know, there was no questioning whatsoever about the mode of entry, when there was an entry, if there was an entry, how there was an entry. The evidence was there were two fences, one, I don't know, 16 or 18 feet tall and one 12 foot tall with barbed wire on top. There was no evidence of anybody scaling a fence. But, so, I mean, would the scenario have to be that this officer was so racist that he went and picked up someone actually in Mexico and then brought him to the station and said, you've committed this crime? I mean, what is the scenario that causes everything to turn on the credibility? What causes the credibility is, you know, not direct line shading about what he remembered that day and the certainty of looking at a photo in the station and then coming into court and saying that that's the same person. I mean, the fact finder should be able to give weight about the certainty of his identification when it's not based on any independent recollection of the day of the arrest. It's based on some supposed look of a photo in the station. And also, you know, you have to rely on him that he actually did ask these questions of the individual, if you're assuming that it was Mr. Peralta. Did he really ask him those two questions? He's a non-native Spanish speaker. He took three months of Spanish in the academy. He says he asks these questions all the time. He didn't remember who he asked the question to first. And so... Can I ask, what do we do about the fact that the fact finder actually was the magistrate judge who saw the information about the membership? So are we just supposed to ignore that because it was, like, in a different capacity? Or what do we make of that? Well, yeah, we make it's a different capacity also. The fact finder was deprived of the ability to see the witness's reaction and demeanor on the stand, which is the essential part of cross-examination. But we kind of know that this fact finder thought that membership alone wasn't material in this fact finder's mind. It's a weird combination of the fact finder being the fact finder and the judge. Right. Well, I think that on a remand, assuming that it's found to be that the judge got it wrong, that it is relevant, then the judge is going to have the ability to set that aside and independently hear the evidence and determine whether the witness is shading the truth a little bit in order to facilitate a conviction or not. I'm sorry. Assuming for the sake of argument that we find that the mere fact of membership is not material, do you lose this argument? The mere fact of membership is not material. Well, I don't know. Not having seen the material, when was the inquiry made? Did they do the follow-up request for information based on these thousands of investigations on the Facebook group? So I don't concede that. So assuming that the sealed material doesn't show anything but the fact of mere membership, could you respond? If it shows mere membership, then that returns to my argument that that's essential cross-examination. Under Brady and Giglio, because how long was a person a member? They say, you know, I've seen these in other cases, so I have a sense that maybe it said, you know, I didn't like their post. Well, how long were you a member? What did you see? Did you report this other racist, violent, degrading material to your supervisors when fellow Border Patrol agents were posting this type of material? Which you have a duty to do. I see. Yes, thank you. Good morning. May it please the Court. Benjamin Hawley for the United States. As the Court conceded in the sealed materials, and obviously I can't get too much into that detail, but the government provided the information we had. The magistrate judge reviewed that, found there was nothing material or Brady or going to bias. The district court did the same thing. The district court obviously can and has done the same thing as well. Even if it should have been turned over, though, it was not prejudicial. Going to Judge Friedland's point about this was the same judge, albeit in a somewhat different role, one as a legal determination and one on the factual determination. Found that nothing about this was material. It would not have changed the result. Even if you consider that as a matter of law. I guess that's my follow-up on Judge Friedland's question. Can we consider the fact that she was both as a matter of law? I think so. So I do not have a case that says that. I think so because the ultimate determination on both the legal and factual question is materiality. So this isn't a situation, for example, where we have 404B evidence, and the Court has to legally determine whether I consider that, puts it aside, and doesn't consider it. There we couldn't cross those streams. Here is a materiality question both ways. So I think the Court could. But, again, even if this Court doesn't necessarily need to address that issue or determine that because of the prejudicial or lack of prejudice, and even if this Court were to ultimately determine this should have been turned over or there was abuse of discretion in this regard, the remedy then is to go back to district court slash magistrate judge, provide that information. That's what was done in the Bernal-Sanchez case. It's not to completely reverse order a new trial and kind of start from step one. What would the alienage evidence have been if this officer was not trusted? Well, so the evidence was his confession, and I suppose if you take that out, then it is the method of entry at that point. But he's yards from the border, 20-plus miles from the nearest point of entry, sprinting north, hiding in the bushes and by some rocks. So those circumstances would indicate that he's not supposed to be here. That's why he's so near the fence, why he's running north, why he's trying to hide. But all of that also comes from the officer's testimony? No, because a lot of that comes from the first agent slash the video. So the video was not enough to make the identification, and I agree with counsel on that. But in terms of showing the fence and where the person was, that they were running north, that they were hiding, in fact, they kind of come off video in a sense for a moment while they're hiding. That's where the first agent, since the second one, kind of directs them in. That's when the second agent then finds Mr. Jimenez-Peralta. And when you started your argument, I think you said we turned over everything we had, like we showed the magistrate judge everything we had.  Do you mean by that that the government looked at all of the files of the investigation of this Facebook group that were done against apparently a lot of different officers to see whether these officers were mentioned in those files? So what I mean is the Hymthorne process or the Hymthorne check provides anything that was in the personnel file. So to the extent that information, and my understanding was, anything derogatory went into the personnel files, that would have been found, and then there was the additional discussion that was included in the sealed material. But in terms of, like the ASA. I guess I have a question about that. At the time that this motion is pending, the ex parte application is pending, it's my understanding that the investigations were still open and that many of them were still open. A large number of them were still open. So it's quite possible that there was an ongoing investigation by CBP and that the information hadn't made its way into the agent's files at the time that this ex parte application was made. And so I guess what I'm concerned about is, assume the following scenario. Assume that CBP had a copy of the entire Facebook page, because they were investigating it. And someone could have, arguably should have, run agent's titles and agent Orozco's handles or whatever, you know, usernames they were using against that Facebook page to see if it returned any results. Because arguably, if there was a post, a like, or a comment, then that would have been cross-examination material that would have been turned over. But because CBP hadn't finished their investigation of, just hypothetically speaking, agent's titles, there was nothing in agent's titles file to acknowledge that. Would the government have had, would the prosecution team, and I use that in quotes, had the obligation to search the Facebook file in CBP's possession? And if so, how do we know that that was done or not done, based on the record that's before the trial judge? So the record here doesn't go into, obviously, the investigations, when they ended, all of that. So that's part of the issue here, is I don't know, and the record certainly doesn't disclose where we were at in terms of the investigations. In terms of what investigation, as it were, that the prosecution team did, that's referenced in the sealed materials, but I do not believe there was anything that was kind of going out to look for additional material. I think the underlying premise is that CBP or some government agency had the entire Facebook page. I don't think that is the case, but again, the record obviously doesn't kind of lead to those details. That uncertainty is what led, in the Bernal case, to remanding, just to find out what, kind of get those details as to that case, because obviously we're five years removed now from the underlying case. So are you suggesting that we do that here? No, I don't think the court needs to, for all the reasons I said, prejudice being one of the main ones, but if the court was going to, that would be the remedy, to get that additional information, have the magistrate judge, in the first instance, again, determine, is there anything here? If so, is it material? But so, I mean, was it an error for the magistrate judge not to ask that question at the time? I mean, I know you have an argument that even if it was error, it was harmless, but wouldn't it be error if there was, down the hall, the whole Facebook page, and it was still being searched, and so it wasn't in the file yet, and they didn't look at it? Wouldn't that be an error? I guess assuming that the entire Facebook page exists, and we could search it, possibly, but the only reason I'm hesitating is because there's not a requirement that we go out and search for information. So in your head's eye, it will sound like we have all of the information already. So in that case, yes, we would need to. Well, I guess the question is, who is we? Someone in CBP had some information about the Facebook page, right? And so the question is, was that incumbent upon the government in this case to go and get that file? Right. So if CBP is part of the prosecution team here, and I don't push back on that, my understanding is we did not have, we meaning the government writ large, have the entire page, or even big chunks of the page. This was a report by ProPublica. They released, you know, several parts of it. The government looked through that, but we did not have kind of independent, you know, access to Facebook to get these pages. Again, I'm very much speaking outside the record here, so that's why I'm being. Yeah, I was going to say, do we even know that based on the record? I mean. Not in this case. Okay. One of the declarations, I'm assuming, suggests that the agent was trying to resurrect the Facebook page and wasn't able to do it. Correct. Implying from that, my understanding is, as counsel indicated, once that ProPublica report came out, the whole thing kind of shut down, and so a lot of agents, you know, either withdrew from the group or the group shut down. At that point, you can't go back in and kind of find all of your posts. So he tried to get to his own information, was unable to do so. I was thinking from the hypotheticals that possibly, you know, that had already been preserved some other way. In that case, then potentially we do need to look through that. Again, my understanding, recognizing we're outside the record, is that that's not the facts on the ground. So if our review of what the magistrate judge did in reviewing the materials the government said before them, is this a, do we look at it de novo? Is it a mixed question? I think it's ultimately a piece of discretion because it's a discovery question as to, was it material? And, well, did it go to bias or otherwise discoverable? Was it material? That's an abuse of discretion call for the magistrate judge. The district court, then, sitting on appeal from the magistrate judge, also looked at it in terms of abuse of discretion. To the extent you're reviewing the district court, I think that same standard review would kind of follow all the way on. I'm happy to discuss the identification or any of the other issues if the court has questions. Otherwise, I'll submit. Thank you. Thank you. Thank you. Just three quick points in terms of the abuse of discretion. If it's a violation of Brady and the right to fully cross examine the witness, that would clearly be an abuse of discretion. Second, in terms of the harmlessness, I'm surprised my friend would say that without that agent's testimony, there'd still be a case. There would be no case. You wouldn't have an identification. You wouldn't have any statements on alienage. It would be absolutely guaranteed Rule 29. If we just repeat, no evidence linking the defendant to anything that happened on that day. And so, and finally, in terms of the ongoing investigation and the material that Well, sorry, can I just bring you back to that? I mean, there is a video, and he is in custody. So, I'm still just a little confused how these things come about. Even if we don't really trust the exact account that the agent has, how he could not be the person who was found across the border. Well, during this time period, the Border Patrol is arresting thousands of people all the time. So, the fact that they have a case. And some of them are actually U.S. citizens. No, I'm talking about how would the fact finder possibly know that this individual in court that day had anything to do with what happened in November. I mean, he was out on bond for one thing. And so, I just don't see how the fact finder could possibly. I mean, that's like saying there's a bank robbery. And you have evidence that the bank was robbed. And nobody identifies the defendant as being, who is in custody, who was arrested for it. Can I just make sure I understand you saying that if there was Brady material that would impeach the impartiality of the agent. That's equivalent to having no testimony at all on identity. Well, no, I'm saying that in terms of the harmlessness review, if the essential witness is disbelieved, then there's no evidence on essential elements of the crime. And you're saying that the Brady material would have made the agent not credible for all purposes. Well, it doesn't have to be, but the fact finder could, depending on how. I mean, that's the whole point of having the full cross-examination. The fact finder can get the demeanor. Just one final thing to intercept. Just one final thing. The intercept article I cite shows that thousands of these pages were archived. And so it did exist even after they started deleting their files, their posts. Thank you, Your Honor. The case of United States v. Jimenez-Geralda is submitted.
judges: IKUTA, FRIEDLAND, Hsu